**SERVICE ARMS COMPANY, INC., Plaintiff,**

v.

**UNITED STATES of America, Department of Treasury, Bureau of Alcohol, Tobacco and Firearms, Defendant.**

**No. CIV–76–0976–D.**

United States District Court, W. D. Oklahoma.

May 5, 1978.

J. Hugh Herndon, Midwest City, Okl., for plaintiff.

John E. Green, Acting U. S. Atty., by Susie Pritchett, Asst. U. S. Atty., Oklahoma City, Okl., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

Plaintiff brings this action pursuant to 18 U.S.C. § 923(f)(3) for judicial review of the denial of its application for renewal of its federal firearms license. Plaintiff's application was denied under 18 U.S.C. § 923(d)(1)(C) by the Defendant Bureau of Alcohol, Tobacco and Firearms (ATF) because Plaintiff was found to have "willfully violated" certain provisions of the Gun Control Act of 1968 (Act), 18 U.S.C. § 921 et seq., and the regulations issued thereunder.

The administrative record before the Court in this case reveals that Plaintiff

filed an application for renewal of its license as a dealer in firearms other than destructive devices or ammunition for other than destructive devices on October 8, 1975 (Ex. 1). This application was denied initially on January 9, 1976 (Ex. 2), and Plaintiff requested a hearing (Ex. 4) which was held before an ATF hearing officer in Oklahoma City on February 11, 1976, and February 18, 1976 (Ex. 14). On October 4, 1976, the ATF Regional Director issued a "Final Notice of Denial of Application or Revocation of License" denying Plaintiff's application (Ex. 15). Plaintiff then brought the instant action for judicial review and a hearing was held herein on February 2, 1978, during which a total of four witnesses testified and three exhibits in addition to those already in the administrative record were received into evidence.

The Gun Control Act of 1968 was enacted primarily to strengthen federal controls over interstate and foreign commerce in firearms and to assist the States in regulating firearms traffic within their borders. *See* H.R.Rep.No.1577, 90th Cong., 2d Sess., *reprinted in* [1968] U.S.Code Cong. & Admin.News, pp. 4410–4435; S.Rep.No.1097, 90th Cong., 2d Sess., *reprinted in* [1968] U.S.Code Cong. & Admin.News, pp. 2112–2309; *see also Huddleston v. United States,* 415 U.S. 814, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974). In this connection, 18 U.S.C. § 923(a) provides that no person shall engage in business as a firearms or ammunition importer, manufacturer or dealer until he has applied for and received a license to

do so from the Secretary of the Treasury or his delegate. The licensing provisions of § 923 impose a duty upon the Secretary to issue a license unless the applicant is disqualified by the carefully defined exceptions of § 923(d)(1).[1] *Rich v. United States,* 383 F.Supp. 797 (S.D.Ohio 1974). § 923(d)(1)(C) provides that licenses may be denied only for "willful" violations of the provisions of the Act or regulations. *Id.* The word "willfully" as used in both §§ 923(d)(1)(C) and (D) includes purposeful and intentional behavior but not mere negligent conduct. *See id.*

A final administrative decision of the Secretary denying an application for a license is subject to "de novo" judicial review under 18 U.S.C. § 923(f)(3). *See id.; Weidner v. Kennedy,* 309 F.Supp. 1018 (C.D. Cal.1970). In such a review, the administrative decision is not entitled to any presumption of correctness or other advantage. *Weidner v. Kennedy, supra.* Rather, § 923(f)(3) requires the reviewing court to decide whether "the Secretary was . . . authorized to deny the application" and imposes a duty upon the court to make an independent determination of the correctness of the Secretary's decision. *Id.*

In the instant case, Plaintiff's application was denied under 18 U.S.C. § 923(d)(1)(C) because Plaintiff was found to have "willfully violated" several record keeping requirements of the Act and regulations and to have sold firearms during a period of time without first obtaining a permit as

---

1. 18 U.S.C. § 923(d)(1) provides as follows:
   "(d)(1) Any application submitted under subsection (a) or (b) of this section shall be approved if—
   (A) the applicant is twenty-one years of age or over;
   (B) the applicant (including, in the case of a corporation, partnership, or association, any individual possessing, directly or indirectly, the power to direct or cause the direction of the management and policies of the corporation, partnership, or association) is not prohibited from transporting, shipping, or receiving firearms or ammunition in interstate or foreign commerce under section 922(g) and (h) of this chapter;

   (C) the applicant has not willfully violated any of the provisions of this chapter or regulations issued thereunder;
   (D) the applicant has not willfully failed to disclose any material information required, or has not made any false statement as to any material fact, in connection with his application; and
   (E) the applicant has in a State (i) premises from which he conducts business subject to license under this chapter or from which he intends to conduct such business within a reasonable period of time, or (ii) in the case of a collector, premises from which he conducts his collecting subject to license under this chapter or from which he intends to conduct such collecting within a reasonable period of time."

required under the ordinances applicable at the place of the sale. In the final administrative decision herein denying Plaintiff's application, the Regional Director made the following findings concerning specific violations of the Act and regulations by Plaintiff:

"I.

That on or about February 22, 1974, Service Arms Co., 2121 South Air Depot, Midwest City, Oklahoma, a firearms dealer licensed under 18 U.S.C. Chapter 44, by and through its Vice President, James Edward Young, did knowingly and unlawfully make a false entry in, fail to make appropirate [sic] entry in, and fail to properly maintain records kept pursuant to 18 U.S.C. § 923(g), and regulations promulgated thereunder, in that it did fail to show in the firearms acquisition records the required information on the receipt of a certain firearm, to wit, a Colt, .45 caliber, semi-automatic pistol, serial number 70G05121, in violation of 18 U.S.C. §§ 922(m) and 924(a) and 27 C.F.R. § 178.125.

II.

That on or about June 2, 1974, Service Arms Co., 2121 South Air Depot, Midwest City, Oklahoma, a firearms dealer licensed under 18 U.S.C. Chapter 44, by and through its Vice President, James Edward Young, did knowingly and unlawfully make a false entry in, fail to make appropriate entry in, and fail to properly maintain records kept pursuant to 18 U.S.C. § 923(g), and regulations promulgated thereunder, in that it did state and represent at line 33–12 in the Acquisition and Disposition Log, that a firearm, to wit, a Ruger revolver, serial number 30–73559, was sold and delivered on that date to Gerald Robinson, which information was required by 18 U.S.C. § 923(g) to be kept in the records of the said licensed dealer and which statement, representation and information was false in that in truth and in fact this firearm was not sold and delivered to this person,

all in violation of 18 U.S.C. §§ 922(m) and 924(a) and 27 C.F.R. § 178.125.

III.

On October 16, 1974, special agents of the Bureau performed a dealer compliance inspection on the licensed premises and noted the following discrepancies:

A. 27 firearms were among the inventory of firearms displayed for sale on the licensed premises; however, they were not recorded in the licensee's acquisition log, in violation of 18 U.S.C. §§ 922(m), 923(g) and 924(a) and 27 C.F.R. § 178.125.

B. 27 firearms that were listed in the acquisition log showed no disposition and were not on the licensed premises, in violation of 18 U.S.C. §§ 922(m), 923(g) and 924(a) and 27 C.F.R. § 178.-125.

C. That between on or about November 27, 1973, and on or about October 15, 1974, 192 firearms were sold and delivered by the licensee in Midwest City, Oklahoma, without first obtaining a permit as required by Midwest City Code, Chapters 23–145 and 23–146, applicable at the place of sale, in violation of 18 U.S.C. §§ 922(b)(2) and 924(a)." (Ex. 15 at 2–3).

The Court will examine each of the above findings in light of the evidence contained in the administrative record as well as the testimony and evidence received at the hearing held in this case on February 2, 1978, and determine whether the decision of the Regional Director that Plaintiff "willfully violated" the Act and regulations issued thereunder is correct.

■ The first violation found by the Regional Director was that Plaintiff, by and through its Vice-President, James E. Young (Young), failed to show in Plaintiff's firearms acquisition records the required information on the receipt of a .45 caliber Colt semi-automatic pistol, serial number 70G05121, (hereinafter "Colt .45") in violation of 18 U.S.C. §§ 922(m) and 924(a) and 27 C.F.R. § 178.125. 18 U.S.C. § 922(m)

makes it unlawful for a licensed firearms dealer to knowingly "make any false entry in, to fail to make appropriate entry in, or to fail to properly maintain, any record which he is required to keep pursuant to [18 U.S.C. § 923] or regulations promulgated thereunder." 18 U.S.C. § 923(g) provides in part:

"Each licensed importer, licensed manufacturer, licensed dealer, and licensed collector shall maintain such records of importation, production, shipment, receipt, sale, or other disposition, of firearms and ammunition at such place, for such period, and in such form as the Secretary may by regulations prescribe."

27 C.F.R. § 178.125(e) requires each licensed dealer to "enter into a permanent record each receipt and disposition of firearms or firearms curios or relics" and specifies the format of said record. 18 U.S.C. § 924(a) establishes penalties for violations of the Act and for knowingly making false statements or misrepresentations concerning information required to be kept in the records of a person licensed under the Act.

At the hearing before the Court, Young testified that he never willfully or intentionally failed to register a weapon and that he never willfully violated the Act or made false statements. However, it appears from the Administrative record herein that ATF agents explained the record keeping requirements of the Act and regulations to Young in 1973 and that he was already familiar with the requirements as he had several years experience in the firearms business. Evidence before the Court indicates that on February 22, 1974, the Colt .45 was received by Young at Plaintiff's place of business from one Raymond Neal as partial payment for another gun Neal purchased from Plaintiff. The Colt .45 was subsequently sold on February 23, 1974, at a gun show in Dallas, Texas, and was never listed in Plaintiff's acquisition and disposition log as required under the Act and regulations.

In view of the foregoing, the Court finds and concludes that Young's failure to make entries in Plaintiff's acquisition and disposition log for the acquisition of the Colt .45 and the sale of the same constitutes a willful violation of the Act when Young's experience and familiarity with the requirements of the Act and regulations are considered. *See McLemore v. United States Treasury Department,* 317 F.Supp. 1077 (N.D.Fla.1970). Therefore, the Regional Director's decision concerning this violation was correct.

■ The second violation found by the Regional Director was that Plaintiff, by and through Young, represented in its acquisition and disposition log that a Ruger revolver, serial number 30–73559, (hereinafter "Ruger") was sold and delivered to Gerald Robinson (Robinson) on June 2, 1974, when in fact this gun was not sold and delivered to Robinson, all in violation of 18 U.S.C. §§ 922(m) and 924(a) and 27 C.F.R. § 178.125.

Plaintiff's acquisition and disposition log is not before the Court. However, part of Exhibit 2 is a list of individuals who purchased guns from Plaintiff which was compiled by an ATF agent. Said list indicates at page 20 that the Ruger was purchased by Robinson on May 31, 1974. Likewise, Exhibit 9 is a "Firearms Transaction Record" Form 4473 which shows that the Ruger was transferred to Robinson on May 31, 1974. Evidence before the Court indicates that the Ruger was sold to John Greenfield at a gun show in Ft. Worth, Texas on June 2, 1974, by Robinson. Both Robinson and Young were doing business at the same "trade table" at the show. Greenfield paid for the Ruger with two $100.00 money orders payable to and endorsed by Young which were stamped "FOR DEPOSIT ONLY—SERVICE ARMS OF MIDWEST CITY, OKLAHOMA." Young testified at the administrative hearing herein that the money orders were made payable to him because he cashed them for Robinson.

As Plaintiff's acquisition and disposition log is not before the Court, the Court is unable to determine whether a false entry was made therein for June 2, 1974, showing that the Ruger was sold to Robinson on that date. Moreover, Exhibits 2 and 9 indicate

26

that the Ruger was sold to Robinson on May 31, 1974, and thus it appears that he was the owner of the Ruger when it was sold to Greenfield. Therefore, the Court is unable to conclude that the Regional Director's decision concerning this violation was correct.

■ The third violation found by the Regional Director arises out of a dealer compliance inspection of Plaintiff's business premises which took place on October 16, 1974. Specifically, the investigating ATF agents noted that twenty-seven firearms displayed for sale were not recorded in the Plaintiff's acquisition log in violation of 18 U.S.C. §§ 922(m), 923(g) and 924(a) and 27 C.F.R. § 178.125; that twenty-seven firearms were listed in the acquisition log but showed no disposition and were not included among the inventory on Plaintiff's premises in violation of the above statutes; and that between November 27, 1973, and October 15, 1974, one hundred ninety-two firearms were sold by Plaintiff in Midwest City, Oklahoma, without first obtaining the permits necessary under the Midwest City Code in violation of 18 U.S.C. §§ 922(b)(2) and 924(a).

At the administrative hearing herein, Young testified that of the twenty-seven firearms displayed for sale but not recorded in Plaintiff's acquisition log, eleven were his personal guns and were marked as not for sale. Of the remaining firearms, Young testified that he did not know or was not sure of the origin or ownership of eleven of them. At the hearing before the Court, Young's testimony essentially substantiated the foregoing. As to the twenty-seven weapons listed in the acquisition log which were not on Plaintiff's premises and for which no disposition was shown, it appears that no firearms transaction records, Forms 4473, for these guns were on Plaintiff's premises.[2] Young testified at the administrative hearing that some of these guns had been sent out for repairs and that he did

not know or was unsure of the manner of disposition of thirteen of these firearms. Young testified before the Court that some of these firearms were in the safe at the time of the compliance investigation and were overlooked by the investigating agents.

Although Young has explained some of the discrepancies in Plaintiff's acquisition and disposition log, his failure to record the acquisition and/or disposition of several of these weapons remains completely unexplained. Therefore, as a number of these firearms were unaccounted for and their acquisition or disposition were not properly recorded as required under the Act and regulations, the Court finds and concludes that the Regional Director's decisions as to these violations were correct.

■ 18 U.S.C. § 922(b)(2) provides that it shall be unlawful for any licensed dealer to sell or deliver:

"any firearm or ammunition to any person in any State where the purchase or possession by such person of such firearm or ammunition would be in violation of any State law or any published ordinance applicable at the place of sale, delivery or other disposition, unless the licensee knows or has reasonable cause to believe that the purchase or possession would not be in violation of such State law or such published ordinance."

Defendant's Exhibit 1 introduced into evidence at the hearing before the Court is a copy of part of the Midwest City Code which provides in pertinent part as follows:

*"Sec. 23–145. TRANSFER TO PERSON WITHOUT PERMIT PROHIBITED.*

No person shall sell, deliver, barter, give or otherwise transfer a pistol or revolver within the city to any person who is not the holder of a written permit from the chief of police of the city authorizing such person to purchase, receive or accept such revolver or pistol; and in no case

2. 27 C.F.R. § 178.124(a) requires a licensed dealer to record the disposal of any firearm to any person, other than a licensee, on a firearms transaction record, Form 4473. § 178.124(b)

requires that each Form 4473 obtained must be maintained as part of the licensed dealer's permanent records.

shall any person deliver a pistol or revolver to the person to whom it is to be sold or transferred until approved by the chief of police in the manner provided in this subdivision. (Ord. No. 258, § 3)

*Sec. 23–146. SELLER TO REQUIRE PERMIT AND DELIVER TO CHIEF OF POLICE.*

It shall be the duty of the person who sells, transfers or gives away any pistol or revolver as provided in this division, at the time such sale, gift or delivery is made, to require the holder of such permit to deliver the permit to the seller. It is the duty of the seller to deliver such permit to the chief of police at the time the report of such sale or gift is made as required by this division. (Ord. No. 258, § 8)"

At the administrative hearing herein, Young testified that the normal procedure for obtaining the permit required under the above ordinances was for him to telephone the records department of the Midwest City Police Department with the pertinent information and that the Police Department would reply within forty-five minutes to one hour as to whether the prospective buyer would be issued a permit. Young further testified that Lt. George Burt of the Midwest City Police Department told him that on Saturdays when nobody was working in the records department, Young could forego the usual procedure and use his own judgment as to which prospective buyer could purchase firearms. Young also testified that of the one hundred ninety-two guns which were sold without first obtaining the necessary permit, many were sold to persons possessing a federal firearms license, to law enforcement personnel or to persons of known good character.

Evidence before the court establishes that Plaintiff sold and delivered four hundred sixteen handguns in Midwest City, Oklahoma, between November 29, 1973, and October 15, 1974. One hundred ninety-two of these guns were sold without the required permit first being obtained from the Midwest City Chief of Police. There is nothing in the record herein to indicate that Plaintiff (or Young) knew or had reasonable cause to believe that the sale of these guns without the necessary permits would not be in violation of the applicable Midwest City ordinances. On the contrary, the evidence indicates that Young was aware of the permit requirements of the ordinances. Therefore, the Court finds and concludes that the Regional Director's decision concerning this violation was correct.

The Court has considered the administrative record in this case as well as the testimony of the witnesses and exhibits introduced at the hearing before the Court and determines that substantial evidence exists herein to support the denial of Plaintiff's renewal application. Therefore, the Court finds and concludes that the Regional Director was authorized to deny Plaintiff's application and that the Final Notice of denial of Plaintiff's application should be affirmed. Accordingly, a Judgment of affirmance will be entered this date.